IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GAIL M. MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:06CV971-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

This suit involves two applications made under the Social Security Act.  The first is an application for disability insurance benefits ("SSD") under Title II of the Act, 42 U.S.C. §§ 401 *et seq*.  The second is an application for supplemental security income benefits ("SSI") based under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*  Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration ("Commissioner") under Title II.  Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review to the same extent as the Commissioner's final determination under section 205.  Gail M. Marshall ("Plaintiff" or "Claimant") applied for SSD and SSI benefits on February 11, 2004, alleging disability since December 28, 2003.  Her applications were denied at the

initial administrative level.  She timely requested a hearing before an administrative law judge ("ALJ"), which was held on December 20, 2005, in Montgomery, Alabama. Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner.  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. §§ 405(g), 1631(c)(3). Pursuant to 28 U.S.C. § 636(c), both parties have consented to conduct all proceedings and allow entry of a final judgment by the United States Magistrate Judge (Docs. 8 & 9, filed November 16, 2006).  Based on its review of the record and the briefs of the parties, the Court concludes that the decision of the Commissioner is due to be affirmed.

## II.  ISSUES

### A.  Introduction

Plaintiff was forty years old at the time of the hearing before the ALJ and has a tenth-grade education.  TR. 20, 55.  Plaintiff's prior work experience included clothes folder, elderly care worker, janitor/cook, machine operator, flower seller, and greenhouse worker.  TR. 25, 59.  Following the administrative hearing, the ALJ concluded that Plaintiff had severe impairments of bilateral fibromatosis, status post excision of a soft tissue mass from her left foot, and gout.  The ALJ found the impairments did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  TR 23.  The ALJ further concluded that, while Plaintiff does not retain the residual functional capacity to perform any past relevant work, TR 25, Plaintiff retained the residual functional

capacity to perform at least sedentary work activity.  TR 2.  Based upon the testimony of a vocational expert, the ALJ found that sedentary jobs exist in significant number in the national economy, and thus, Plaintiff was not disabled within the meaning of the Social Security Act since the alleged onset of her disability.  TR 26.

## B.  *Plaintiff's Claims*

Plaintiff presents two issues for review:  (1) whether the ALJ properly considered Plaintiff's pain within the framework of the Eleventh Circuit pain standard and Social Security Rulings ("SSRs"), and (2) whether the ALJ made proper credibility findings consistent with SSR 96-7p.

## III.  STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead, must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the

reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id.  To make this determination[1] the Commissioner employs a five step, sequential evaluation process as follows:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on Steps 3 and 5, to a finding of disability.  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."

*See* 20 C.F.R. §§ 404.1520, 416.920; *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

---

1   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

1986).[2]

## IV. DISCUSSION

### A. *Plaintiff's Pain as Reviewed under the Eleventh Circuit Pain Standard*

Plaintiff initially claims the ALJ "did not properly consider [Plaintiff's] pain with the objective medical findings, particularly some of the x-rays noted by both Dr. [Philip] Golomb and within her medical records." PL Brief (Doc. 13) at 7. Plaintiff indicates that the ALJ "failed to properly consider [Plaintiff's] pain within the framework of the Eleventh Circuit pain standard and also within . . . SSR 96-7p." *Id*. at 8. Thus, this Court reviews whether the ALJ properly applied the law.

The ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date of her disability and had severe impairments of bilateral fibromatosis, status post excision of a soft tissue mass of the left foot, and hypertension (Step 1 & 2). *See supra* at 3. The ALJ did not find these impairments, considered individually and in combination, met or equaled any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Step 3). TR 20-23, 26. While finding Plaintiff could not perform her past relevant work (Step 4), the ALJ found that Plaintiff could perform other work of a sedentary nature (Step 5).

Specifically, the ALJ found the following limitations as they pertain to Plaintiff's

---

[2] *McDaniel v. Bowen*, *supra*, is a SSI case. The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

residual functional capacity:

> The [C]laimant presently retains the residual functional capacity to perform at least sedentary work activity. I find that the [C]laimant can sit for 6 hours out of 8 hours; stand for 2 hours out of 8 hours and walk for 2 hours out of 8 hours without interruption[,] 30 minutes for stand/walk and 2 hours for sitting; frequently grasp with right and left hand and use right and left hand at least frequently for fine manipulation; cannot use feet for repetitive movements such as operating foot controls or pushing an[d] [p]ulling [*sic*]; occasionally bend, stoop, crawl, climb, crouch, kneel and balance, never climb ladders, ropes or scaffolds or be around moving and hazardous machinery or unprotected heights; occasionally reach above the shoulder; and avoid exposure to . . . concentrated or excessive exposure to pulmonary irritants. She experiences mild to moderate pain which occasionally interferes with concentration, persistence, and pace. She is also restricted from driving commercial motorized vehicles.

TR 27. Furthermore, the ALJ specifically articulated the following findings: "[C]laimant has had problems with her feet and has limitations; however, the overall evidence from the Claimant's own treating physicians and from consulting physicians do not demonstrate that the [C]laimant's impairments are of the severity that the Claimant would be prevented from doing all gainful work activity." TR 24. The ALJ further notes: "the [C]laimant was released to work activity, and Dr. [Philip] Golomb, in a more recent evaluation [performed September 15, 2005,] stated that the [C]laimant could perform work activity from a seated position even though she had problems with her feet." TR 24, *see also* TR 21.

**B.    *The Pain Standard***

To establish a disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test showing:

(1)    Evidence of an underlying medical condition; *and either*

6

      (2)      Objective medical evidence confirming the severity of the alleged pain; *or*

      (3)      That the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*emphasis in original*) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (*citing Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

      In the case at hand, although the ALJ does not specifically cite or refer to the language of the three-part test in *Holt*, his findings and discussion indicate that the standard was applied. *See Wilson*, 284 F.3d at 1225-26 (the ALJ did not cite or refer to the language of the three-part test in *Holt*, but the findings and discussion indicated that the standard was applied). As to Plaintiff's complaints of pain, the ALJ found that while "the [C]laimant's testimony of disabling pain and functional restrictions may be sincere . . . it is disproportionate to the overall objective medical evidence." TR 24. He further found that "[w]hile the record contains some objective signs and findings that could reasonably be expected to produce some pain and limitations, as have been noted, I find that the overall evidence does not corroborate the degree and intensity of pain and limitations alleged." TR 24. Further, the ALJ cites to 20 C.F.R. § 404.1529 which "contains the same language regarding subjective pain testimony" that the Eleventh Circuit interpreted when initially establishing the three-part pain standard. *Wilson*, 284

7

F.3d at 1226 (citations omitted).³ Based on the above, the ALJ found objectively determined medical conditions, but indicated that the conditions could not give rise to the claimed degree pain, and Plaintiff could still perform sedentary work in spite of her limitations.

The ALJ provided a detailed description of Plaintiff's medical records, including a review of x-rays from February 11, 1996, February 1998, and April 16, 2004, contained in the records from Community Hospital. TR 20. He also summarized treatment records from Dr. Gregory Dubay ("Dr. Dubay"), as well as referencing x-rays that Dr. Dubay reviewed. TR 21. The ALJ also considered a Residual Physical Functional Capacity Assessment completed on May 5, 2004, by Dr. Hampton Smith, a medical consultant with the State Agency, records from East Alabama Medical Center, and the consultative evaluation performed by Dr. Philip Golomb ("Dr. Golomb") on September 15, 2005. TR 21-22. The ALJ included a review of the more recent records from Community Hospital and Tuskegee Medical Surgical Clinic. TR 23. Weighing the medical documentation against Plaintiff's testimony, the ALJ concluded that "[C]laimant's testimony of disabling pain and functional restrictions" was "disproportionate to the overall objective medical evidence." *Id.* at 24.

Based on the above, this Court finds the ALJ made a reasonable decision to reject

---

³
     The ALJ stated: "I have considered the [C]laimant's subjective complaints, including those regarding pain, in accordance with 20 C.F.R. §§ 404.1529[,] 416.929, [SSR] 96-7p, and applicable Eleventh Circuit case law. Medical opinions as to the [C]laimant's work capacity, including those of Disability Determination Services consultants, have been evaluated pursuant to 20 C.F.R. §§ 404.1527[,] 416.927, and [SSR] 96-2p and 96-6p." TR 23.

Plaintiff's subjective testimony, articulating the contrary evidence as his reasons for doing so.  Applying the pain standard, the ALJ properly considered Plaintiff's assessment of her pain level and determined that it was not credible to the degree alleged because the objective evidence did not confirm the severity of Plaintiff's alleged limitations.  After a discussion of the medical records, the ALJ indicated that he gave "substantial weight to the opinions of Dr. DuBay and Dr. Golomb regarding the [C]laimant's functional abilities.  Their opinions are well supported by their own clinical examinations and testing, and it is generally consistent with the record as a whole."  TR 24.  Dr. Dubay gave Plaintiff only minimal restrictions on two occasions and did not restrict Plaintiff as of her last visit.  Dr. Golomb's restrictions were well defined.  It was based on these restrictions that the ALJ formulated his assessment of Plaintiff's functionality.

In addition, based on the above information, there was substantial evidence for the ALJ to determine Plaintiff could not perform past relevant work (Step 4).  On consideration of the record, the ALJ found that "[C]laimant presently retains the residual functional capacity to perform at least sedentary work activity."[4]  TR 24.  The ALJ also questioned the vocational expert about the availability of jobs in the regional and national economy, and it was opined that there existed a significant number of sedentary jobs (Step 5).  TR 26, 296-97.  The vocational expert testified Plaintiff could work as an assembler, inspector/checker, or machine packer.  TR 296.  Based on this testimony,

---

[4] Sedentary work is defined in 20 C.F.R. 404.1567(a) as work that involves lifting no more than 10 pounds at a time and occasional lifting or carrying.  A sedentary job usually involves mostly sitting, but may involve a certain amount of walking and standing, usually 2 hours out of 8 hours.

Plaintiff would not meet Step 5 of the 5-Step, burden-shifting analysis. Accordingly, the ALJ's determination was based on substantial evidence and a correct application of the law.

### C.   *Plaintiff's Credibility and SSR 96-7p*

Plaintiff objects that the ALJ did not find her completely credible and "made no specific findings as to her credibility." PL Brief (Doc. 13) at 9-10. Plaintiff argues that she must be found credible pursuant to *Brown v. Sullivan*, 921 F.2d 1233 (11th Cir. 1986), because the ALJ must "consider the entire administrative record and give specific reasons for the weight given to the individual's statements." *Id.* at 9. Though it is not specifically argued, and there are no references to Plaintiff's specific testimony in her brief, it is assumed Plaintiff argues that her testimony supports her pain claims and that Plaintiff's level of pain disables her from all work, including the sedentary work that the ALJ indicated Plaintiff could perform.

Under SSR 96-7p, "an individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996) at 2 ("SSR 96-7p"). The ALJ must make a finding of credibility based on the entire case record. *Id.* at 3-4. The Ruling further states in discussing subsections 404.1529(c)(4) and 416.929(c)(4) of the Commissioner's regulations that "an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations are restrictions

due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." *Id.* at 3-4; *see also* 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).  It is noted that "the Secretary by his regulations prefers testimony supported by testing or clinical findings to unsupported testimony." *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir. 1986).  The testimony of a vocational expert is preferred to determine if plaintiff can perform specific jobs. *Chester v. Bowen,* 792 F.2d 129, 132 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981).  "A clearly stated credibility finding should not be disturbed unless it is not supported by substantial evidence." *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1213 (M. D. Ala. 2002).

### 1. *Plaintiff's Testimony*

Plaintiff testified "I don't usually lift nothing." TR 270.  Her son cooks microwave meals for her, and her daughter shops for her.  Plaintiff is able to groom herself. *Id.*  Plaintiff is not able to do any walking for exercise and can stand up "under ten minutes." TR 271.  When she sits, her "toe up to [her] knees bother [her] a whole lot." *Id.*  Her feet "pain[] [her] real bad every day." *Id.*  Plaintiff has "a big knot in my feet now in the middle of my feet [left foot] where I had got cut at" [her surgery was in 2004], and it "pain[s] - [*sic*] [her] very bad." TR 272.  The knot has gotten bigger.  TR 281-82.  Her right foot has not been operated on because of the gout in her feet.  TR 272.  Plaintiff has gout in both feet, *id.,* and cramps.  TR 282.  Plaintiff also has a callus and a bunion on the side of her right foot. *Id.*  She was going to have surgery on the bunion,

but could not because of the gout. TR 283. Her right middle toe is "crooked up." TR 284.

"[A]ll the time, I say it hurt every day and all night. I can't really walk. My feet stay swollen a lot and . . . stay hot." TR 272-73. Plaintiff testified that when her feet flare up, three to four times per week, they get "real hot," and she takes her pills and lays down. TR 273. The flare-ups sometimes last all day and all night. *Id.* Plaintiff has walked with crutches since 2004, but also used them previously when she sprained her right foot and subsequently broke her left foot. TR 273-74. Plaintiff testified that Dr. Dubay said "there's nothing else he could do" and that he wanted to send her to a specialist but she could not afford to see one. TR 274. Plaintiff went to see Dr. Hooks at a clinic. TR 285-86. Plaintiff takes Extra Strength Tylenol and Panlor SS for pain. TR 275. Nothing she does helps with the pain. TR 277. Plaintiff testified that she does not visit friends or go to church; all she does all day is "lay down and take my medicine." TR 276. Plaintiff does not do much house work, but she sweeps "every now and then." TR 285.

Plaintiff also has problems with both knees, but the right knee is worse. TR 278. She is not able to stoop because of it. *Id.* She has a driver's license but cannot drive because she "can't manage no pedal." TR 279. "[A]ir . . . hurts [Plaintiff's] legs real bad." *Id.* Plaintiff cannot get into any position which makes her legs feel better. TR 280, 283. Pain wakes Plaintiff up from sleep. *Id.* at 280. She sometimes takes two pills instead of one trying "to make the pain go away." TR 284.

### 2. The ALJ Analysis

The reasons the ALJ gave for discounting Plaintiff's testimony and finding her not wholly credible include: (1) Plaintiff was released to work activity, and (2) Dr. Golomb stated Claimant could perform work activity from a seated position even though she had problems with her feet. TR 24. The ALJ noted that even with cast immobilization, Dr. Dubay returned Plaintiff to work in January 1999. TR 24.

Plaintiff alleged that she continued to work until December 28, 2003. TR 59. A later application for SSI benefits alleged a disability start date of February 11, 2004, as it pertained to her condition of gout. TR 255. The ALJ discussed in Dr. Dubay's treatment note dated May 13, 2004, "when the possibility of sit down jobs were being discussed he commented that 'she just wants her disability.'" TR 24. The treatment note reads: "she does not want to go to school and does not want to learn anything; she just wants her disability." TR 221. While Dr. Dubay treated Claimant both in 1998-99, TR 121-25, and again in 2004, TR 105-120, 244-253, Dr. Dubay does not give specific restrictions as to activities, except as to December 15, 1998, when he indicated Plaintiff should limit activities to promote healing, TR 122, and on January 15, 1999, when he limited her from climbing stairs until February 15, 2000. TR 121. Plaintiff continued working thereafter until December 28, 2003. When Dr. Dubay saw Plaintiff again in 2004, treating her for a variety of foot conditions, there is no discussion in the records of specific limitations as they relate to work or other activities. He also did not define Plaintiff's functional impairment.

The ALJ, thus, looked to the report of Dr. Golomb for further definition of functional limitations while specifically noting that substantial weight was being given to both Dr. Golomb's and Dr. Dubay's opinions. "Their opinions are well supported by their own clinical examinations and testing, and it is generally consistent with the record as a whole." TR 24. The ALJ acknowledges that [w]hile the record contains some objective signs and findings that could reasonably be expected to produce some pain and limitations, as have been noted, I find that the overall evidence does not corroborate the degree and intensity of pain and limitations alleged." *Id.*

This Court has acknowledged that the ALJ does not discuss Plaintiff's hearing testimony in detail. The ALJ states in his conclusion that '[t]he Claimant's allegations of pain and functional limitations are not fully credible." TR 26. As to this last statement, Plaintiff argues "[t]his short and general conclusory statement does not satisfy the requirements for credibility findings as held by the Eleventh Circuit and as stated in the Social Security Laws and Regulations," and therefore, because it was not specific enough, Plaintiff's testimony must be accepted as true. PL Brief (Doc. # 13) at 9-10. Plaintiff does not discuss the additional statement of the ALJ wherein he stated: "I find that the [C]]laimant's testimony of disabling pain and functional restrictions may be sincere; however, I find that it is disproportionate to the overall objective medical evidence." TR 24. The ALJ gave substantial weight to the opinion of Plaintiff's treating physician, Dr. Dubay, who, in the medical records, "[q]uestion[ed] alternative gain." TR 221, 24. Evidence of malingering "constitutes substantial evidence upon which the ALJ

could base his decision to discredit the testimony with regard to his subjective complaints of pain." *Sellers v. Barnhart*, 246 F. Supp. 2d at 1213.

The Commissioner argues "the ALJ cited considerable evidence suggesting that Plaintiff's subjective complaints were not fully credible, including evidence her own treating physician suspected she had an element of 'secondary gain' to her complaints." Def. Brief (Doc. # 14) at 9. This fact is bore out by the record evidence. TR 221. The testimony of a treating physician must be given substantial weight unless "good cause" is shown to the contrary. *Lewis v. Callahan,* 125 F.3d 1436 (11th Cir. 1997). The ALJ indicated that he gave "substantial weight" to the opinions of Dr. Dubay and Dr. Golomb. Since Dr. Dubay's records did not impose specific functional limitations, the ALJ looked to the limitations imposed by Dr. Golomb,[5] and these provided substantial evidence on which to base a finding that Plaintiff retained the residual functional capacity to perform sedentary work.

Still, the ALJ did not make any specific references to factors such as Plaintiff's daily activities, the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms as testified to by Plaintiff, or the weight given to any of Plaintiff's statements. SSR 96-7p indicates:

> The reasons for the credibility finding must be grounded in the evidence

---

[5] The ALJ's restrictions, *see* TR 27, 295, are more restrictive than the restrictions placed on Plaintiff by Dr. Golomb, TR 22, 149-56, but are consistent with the function limitation associated with sedentary work as define in 20 C.F.R. 404.1567(a), with additional modifications. There was also a detailed description of a Residual Functional Capacity Assessment completed on May 5, 2004. *See* TR 21. The exertional limitations in that evaluation indicated occasional lifting up to 50 pounds; frequent lifting and/or carrying up to 25 pounds; standing and/or walking (with normal breaks at least 2 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday, TR 127-28, and these also provide substantial evidence for the ALJ's conclusion.

and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegation have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p at 4. Even accepting Plaintiff testimony as true, the likelihood that the ALJ's ultimate finding would have changed is too small to warrant reversal. *See Bell v. Barnhart*, 444 F. Supp. 2d 1195, 1201 (M. D. Ala. 2006), (*citing Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *Miller v. Barnhart*, 182 Fed. Appx. 959, 960 (11th Cir. May 31, 2006); *Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (if the ALJ's misapplication of the regulations does not change the ultimate result, the error is harmless). Thus, the decision of the ALJ is not due to be reversed on this ground.

## V. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is due to be affirmed. A separate order will issue.

DONE this 17th day of August, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE